IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN ANDREW KISTER, | ) | |
| AIS 264274, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-758-CSC |
| | ) | |
| RUTH NAGLICH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

### I.    Introduction

Pro se Plaintiff John Kister is confined at the Bibb Correctional Facility in Brent, Alabama. Kister filed this 42 U.S.C. § 1983 action on the allegation that his federally protected rights were violated through a failure to provide adequate medical care. Doc. 1 at 3–4. Kister names former Associate Commissioner Ruth Naglich as a defendant. Doc. 1 at 1, 3. Also named are Patrice Jones, the Warden at the Bullock Correctional Facility at all relevant times, and Wexford employee Dr. Tahir Siddiq, the Medical Director   at Bullock. *Id.* & Doc. 5. For relief, Kister requests the Alabama Department of Corrections (ADOC) be ordered to send him to an eye doctor and that he be awarded $10,000 in damages from each defendant for delayed medical care. Doc. 1 at 5. Kister also requests trial by jury. Doc. 33.

Defendants filed Answers and Special Reports, along with relevant evidentiary materials (*e.g.*, affidavits and prison documents). Docs. 13, 15, 18, 21.  The court in turn

directed Kister to file a written response supported by affidavits or other statements made under penalty of perjury. Doc. 23 at 1–2. Kister thereafter filed a declaration and responsive materials. Docs. 28–32.

The parties previously were given notice that "the court may at any time [after expiration of the time for Kister to file a response] and without further notice to the parties (1) treat the [special] reports and any supporting evidentiary materials as motions for summary judgment, and (2) after considering any response …, rule on the motions for summary judgment in accordance with the law." Doc. 23 at 2.  Pursuant to that disclosure, the undersigned now deems it appropriate to treat the reports filed by Defendants as motions for summary judgment and resolves the motions in favor of Defendants.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing a genuine dispute of material fact. *Id*. at 324. The

nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

In determining whether a genuine dispute of material fact exists, the court must view all the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment also should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.   Relevant Facts[1]

Kister commenced this pro se action challenging Defendants' alleged failure to provide constitutionally adequate medical care during his incarceration at the Bullock Correctional Facility.  Kister, who filed this action on September 21, 2020, maintains the challenged conduct began in June of 2020 and was ongoing when he filed the Complaint. Doc. 1 at 3. The facts identified by Kister in support of his claims for relief are as follows:

1.     I am experiencing blurry vision in my right eye. I also can see a red "splotch" in this same eye.

2.     I have requested to see an eye doctor at 2 different institutions—Elmore Corr. Fac. And Bullock Corr. Fac.

3.     Both prisons utilize the same eye doctor—Dr. Bradford.

4.     I was told at both prisons that Dr. Bradford was not seeing prisoners due to Covid 19.

5.     The Alabama Dept. of Corrections has an obligation to provide timely health care to prisoners.

6.     It has been months since I first complained of a problem with my right eye.

7.     I need to see an eye doctor as soon as possible.

Doc. 1 at 4.[2]

---

[1] Where facts are in dispute, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992). Accordingly, the "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400, *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (citation omitted) (explaining that "what we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.")

[2] Kister signed his Complaint and his Declaration of Evidence under penalty of perjury (Doc. 1 at 5; Doc. 32 at 1). Therefore, the court will treat the Complaint and Declaration of Evidence as

Dr. Tahir Siddiq is a licensed physician employed as the Medical Director at Bullock. Doc. 15-1 at 1; Doc. 21-1 at 2. Dr. Siddiq is aware of Kister's allegations regarding blurry vision and a "splotch" in his right eye and affirms there has been no delay or denial of necessary medical care regarding Kister's vision issues. Doc. 15-1 at 3. Kister's prison medical records show he was evaluated on September 21, 2020, by Dr. Bradford, an optometrist, who conducted a vision eye exam. Doc. 15-2 at 3; Doc. 15-1 at 2. Kister reported "having problems with [his] eyes and [he] need[ed] new glasses." Doc. 15-2 at 3. Dr. Bradford evaluated Kister's vision which included dilation of his eyes. *Id.* Dr. Bradford determined that Kister did not have glaucoma or cataracts. *Id.* Following the exam, Dr. Bradford ordered eyeglasses for Kister which he received on October 2, 2020. Doc. 15-2 at 1, 6; Doc. 15-1 at 2. After receiving his glasses Kister informed the medical staff at Bullock that the eye glasses were not helpful and that he was dissatisfied with Dr. Bradford's services. Doc. 15-1 at 2. In his October 30, 2020, Declaration, Dr. Siddiq testified that arrangements were being made for Kister to be seen at the Dothan Eye Clinic. *Id.* at 3; *see also* Doc. 21-1 at 2–3.

---

evidence when ruling on the motions for summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). Kister's opposition responses (Docs. 28, 29, 30, 31), however, are unsworn and not signed with an averment they were made under penalty of perjury. *See* 28 U.S.C. § 1746. Therefore, the court does not treat their factual assertions as evidence on summary judgment. *Sears,* 922 F.3d 1206; *see also Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (*citing Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (noting that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment."); *see also Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 n.3 (11th Cir. 2005) (noting that "the complaint was unverified and therefore could not be considered evidence supporting [plaintiff's] claim" on summary judgment); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (explaining that unsworn statements, even by pro se parties, should not be "consider[ed] in determining the propriety of summary judgment").

## IV.     Discussion

Dr. Siddiq denies   Kister's claims of deliberate indifference. Docs. 13, 15. Defendants Naglich and Jones (collectively "the correctional defendants") argue that because Kister's Complaint fails to submit any evidence or assert any allegations that they personally participated or had any responsibility for his medical care, he fails to state a deliberate indifference claim against them nor can liability be imposed on them based on a claim for negligence or a theory of *respondeat superior*. *See* Docs. 18, 21. The correctional defendants also assert immunity in their official and individual capacities.[3] *See id.*

### A.     Sovereign Immunity

Kister seeks money damages on his claims for relief. In response, the correctional defendants assert Kister's suit against them, to the extent they are sued in their official capacities, is barred by the Eleventh Amendment immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). The Eleventh Circuit has held:

> [T]he Eleventh Amendment prohibits federal courts from entertaining suits
> by private parties against States and their agencies [or employees]. There are
> two exceptions to this prohibition: where the state has waived its immunity

---

[3] Dr. Siddiq also asserts sovereign and qualified immunity. Doc. 13. The party's briefing indicates that Dr. Siddiq works for Wexford, the prison healthcare contractor. Doc. 15 at 2. As an employee of the contract healthcare provider, Dr. Siddiq's qualified immunity argument is foreclosed by *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir.1999), *amended*, 205 F.3d 1264 (11th Cir. 2000). In *Hinson*, the Eleventh Circuit relied upon the reasoning of *Richardson v. McKnight*, 521 U.S. 399 (1997), where the Supreme Court declined to extend qualified immunity to privately employed prison guards, to hold that qualified immunity may not be extended to privately employed prison physicians. Based upon *Hinson*, Dr. Siddiq cannot claim the protection of qualified immunity. In addition, for similar reasons that the *Hinson*, *Edwards* and *Richardson* courts declined to extend the doctrine of qualified immunity, Dr. Siddiq is not entitled to sovereign immunity as such is reserved for the State and its employees.

or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (quotation marks and citation omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)); Ala. Const. Art. I, § 14. Thus, to the extent Kister sues the correctional defendants in their official capacities, as state actors, they are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

**B.     Qualified Immunity**

Regarding Kister's claims against the correctional defendants in their individual capacities, they argue that they are entitled to qualified immunity. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does  not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified

immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that the correctional defendants were acting within the course and scope of their discretionary authority when the challenged conduct occurred. Kister must, therefore, allege facts that, when read in a light most favorable to him, show that these defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Kister must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty*., 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle that should control the novel facts of the situation;" or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d

1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

### C.    Deliberate Indifference

The Supreme Court determined in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. "To establish a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *Roy*, 53 F.4th at 1346-47 (citation omitted).

A claim for deliberate indifference has both an objective and a subjective component. The objective element requires Kister to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation marks and citation omitted). The subjective component of a deliberate indifference claim requires that a defendant have subjective knowledge of the risk of harm and consciously disregard that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety…"). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Farrow*, 320 F.3d at 1246 (quotation marks and citation omitted) (holding that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate").

The deliberate indifference standard requires a plaintiff to demonstrate that the conduct complained of entailed more than mere negligence or "an inadvertent failure to provide adequate medical care." *Estelle*, 429 U.S. at 105; *Farmer*, 511 U.S. at 835. "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citations omitted). "Cases stating a

constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*. But medical treatment does not need to be "perfect, the best obtainable, or even very good," and "[a] prisoner brining a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't. of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (quotation marks and citation omitted). Only medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" violates the Eighth Amendment. *Id.* (quotation marks and citation omitted). An inmate who received care but disagrees with the course of treatment provided or desired another type of treatment cannot, without more, demonstrate deliberate indifference. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). Thus, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266 (quotation marks and citation omitted) (alteration in original). Deliberate indifference requires that a defendant intentionally failed to provide medical care. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

### 1.   Defendants Naglich and Jones

Kister files this action against former Associate Commissioner Naglich and Warden Jones challenging the adequacy of treatment provided for his vision-related issues. Doc. 1 at 4.  The correctional defendants argue they had no responsibility for Kister's medical care during his incarceration at Bullock and that they are entitled to sovereign and qualified

immunity. The correctional defendants also argue they cannot be held liable in this action under a theory of *respondeat superior* and because (1) they make no decisions related to inmate medical care and relied on the medical expertise and medical professionals at Bullock to provide medical care to inmates including Kister, (2) they had no personal familiarity with the provision of Kister's vision needs or care, and (3) they defer to the professionals employed by the prison medical care provider regarding the health care needs of Kister during his incarceration. *See* Doc. 18; Docs. 21, 21-1, 21-2.

Kister presents no facts which create a triable issue regarding his claim that the correctional defendants acted with deliberate indifference to his medical needs. It is clear from the pleadings, declarations, and prison records that Defendants Naglich and Jones are not personally familiar with Kister's healthcare needs and made no decisions regarding his vision care and treatment. There is no evidence that the correctional defendants were responsible for determining the level of necessary medical care for Kister, that they impeded his access to medical care, that they attempted to intercede, overrule, or influence decisions made by medical personnel regarding Kister's medical care, or that they personally participated in or had any direct involvement with the medical treatment provided to him for his vision needs. *See* Doc. 15-2 at 1–6, Doc. 21-1, Doc. 21-2.

In the event Kister seeks to hold the correctional defendants liable for the treatment provided by medical professionals, he is likewise entitled to no relief:

> The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim

cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007). *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (absent a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference).

In the event Kister asserts a claim of negligence against the correctional defendants, settled law holds that mere negligence is insufficient to support a § 1983 claim for deliberate indifference. Negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 106 (explaining that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Farmer*, 511 U.S. at 835 (finding that a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.).

Finally, if Kister seeks to hold the correctional defendants liable under a theory of *respondeat superior* or vicarious liability, the law is settled that liability in a 42 U.S.C. § 1983 action may not be based on either of these theories. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*.");

*Cottone*, 326 F.3d at 1360 (holding that "officials are not liable under § 1983 for the unconstitutional acts of their subordinates [or co-workers] on the basis of respondeat superior or vicarious liability."). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

Even if supervisory liability under § 1983 cannot be established by the supervisor's personal participation in the complained acts, liability may be shown by "the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988). "Although § 1983 requires a connection between the official's acts or omissions and the plaintiff's injury, an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights. [*Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001) ]." *Salas v. Tillman*, 162 F. App'x. 918, 922 (11th Cir. 2006). A plaintiff can establish a causal connection only when

> [A] history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

*Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted).

Although aware that Kister had been seen by both Dr. Siddiq and Dr. Bradford regarding his vision needs, the correctional defendants testify to having no personal knowledge or familiarity with Kister's vision care or vision needs. Docs. 15-1, 21-2. Further, there is no evidence the correctional defendants are or were involved with the daily

medical treatment provided to inmates, including vision care and treatment, and rely on the medical expertise of the medical professionals employed by the prison health care provider. *See id.*

There is no allegation by Kister nor evidence in the record which shows the correctional defendants had any involvement in his allegedly deficient vision care and treatment. Moreover, there is no evidence any of the correctional defendants is an official having responsibility for the challenged action which is necessary to show a connection to the alleged unconstitutional acts at issue. *See Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988). There is no evidence the correctional defendants had decision-making authority regarding the treatment provided for his vision needs or took any action in that regard. The correctional defendants indicate they had no personal involvement in or awareness of the health care provided to Kister. Kister has also not produced  evidence that the correctional defendants had any notice of a history of abuse regarding medical policies, that they were involved in establishing a specific custom or policy related to medical care, or that they directed subordinates to act unlawfully or failed to stop them from acting unlawfully regarding medical care. *See Harrison*, 746 F.3d at 1298.

Here, in the event Kister seeks to hold the correctional defendants liable in their supervisory roles for medical decisions made by their subordinates—in this case the medical professionals—involved in the provision of his vision care and treatment, Kister has not produced sufficient evidence to establish a genuine dispute of material fact that the correctional defendants took any action related to his vision care and treatment or that they had any knowledge of his vision-related issues. *See Williams*, 198 F. App'x at 897;

*Cameron*, 525 F. Supp. 2d at 1307. Accordingly, Defendants Naglich and Jones are entitled to qualified immunity on Kister's claims against them and their motion for summary judgment is due to be granted. *See Celotex Corp.*, 477 U.S. at 322.

### 2. Defendant Siddiq

Kister challenges the adequacy of treatment provided by Dr. Siddiq for his vision-related issues. Doc. 1 at 4. Dr. Siddiq maintains that at all times Kister received appropriate medical care and that at no time was medical care related to Kister's vision issues delayed or denied. Doc. 15-1 at 3.

Assuming, *arguendo*, Kister's condition presents a serious medical need, he presents no evidence sufficient to create a genuine issue of disputed fact regarding the claim that Dr. Siddiq acted with deliberate indifference to his medical needs. As to Kister's allegations that Dr. Siddiq denied, delayed, or provided ineffective treatment of his vision issues, "to recover on his claim[s] of inadequate medical care, [Kister] had to prove that [Dr. Siddiq] engaged in acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." *Hamm*, 774 F.2d at 1574-75 (internal quotation marks and citation omitted); *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner's health or safety;

While Kister claims he should have received different medical care or should have been seen earlier by an eye doctor for his vision-related concerns, his evidence supporting these claims, is sparse. The only evidence concerning these allegations are Kister's sworn Complaint (Doc. 1) and his sick call requests and medical grievances (Docs. 32-1 – 32-4). Kister's evidence indicates the onset of his vision issues began in June 2020. Doc. 1 at 3.

On July 28, 2020, Kister submitted a sick call request requesting new glasses and stating he was experiencing blurry vision in his right eye and saw what appeared to be a red splotch on his right eye. Doc. 32-1. Kister submitted another sick call request on August 28, 2020, stating his right eye was very bad and getting worse, he needed to see an eye doctor, and noting he has previously submitted a sick call request in July about his vision complaints. Doc. 32-2. On September 3, 2020, Kister completed a medical grievance explaining his attempts to be seen by an eye doctor and stating that his vision problems constituted an "urgent issue that need[ed] to be addressed immediately." Doc. 32-3. In a response dated September 11, 2020, medical staff informed Kister he would be scheduled for an evaluation with Dr. Siddiq and that the eye doctor was not allowed to return to the facility at that time. *Id.* Kister appealed the grievance response on September 12, 2020, stating he had not received a response to his initial grievance. Doc. 32-4. Medical staff advised Kister in a response dated September 17, 2020, that he would be seen by Dr. Siddiq that day. *Id.* The record further shows Kister then had his eyes examined by Dr. Bradford on September 21, 2020, and the physician ordered eyeglasses for Kister on October 2, 2020. Doc. 15-2 at 1, 3, 5, 6.[4] After Kister informed medical staff that his new glasses did not help him and he was dissatisfied with Dr. Bradford, medical personnel began arrangements to schedule an appointment for Kister with an outside eye clinic. Doc. 15-1 at 2–3.

Here, no evidence has been presented which indicates that Dr. Siddiq was subjectively aware of any serious medical condition regarding Kister's vision issues.

---

[4] Pages 2 and 4 of Doc. 15-2 are blank pages. *See* Doc. 26.

Although Kister complains of a delay in seeing an eye doctor, the standard for deliberate indifference requires that a defendant knows of and disregards a substantial risk of serious harm to an inmate's health or safety. *Farmer*, 511 U.S. at 837-38 ; *see also Estelle*, 429 U.S. at 105 (explaining that imperfect medical treatment, "although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."). Rather than demonstrating deliberate indifference to his medical needs, Kister's allegations reflect only his disagreement with the medical treatment provided and when it was provided. However, "[i]t is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate." *Abel v. Lappin*, 661 F. Supp. 2d 1361, 1373 (S.D. Ga. 2009) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). Moreover, Kister has not demonstrated that Dr. Siddiq or any other medical personnel intentionally delayed the provision of medical treatment for a life-threatening or urgent medical condition. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007) (quoting *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419 (11th Cir. 1997) ("[A]n official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay.").

In sum, Kister presents no evidence showing the way Dr. Siddiq—or any medical personnel—addressed his vision concerns or condition created a substantial risk to his health that the attending health care personnel consciously disregarded. Nor has any evidence been presented that the course of treatment undertaken by Dr. Siddiq was "so

grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505 (quotation marks and citation omitted). Kister has not alleged or identified any specific facts on which a reasonable jury could find that Dr. Siddiq knew the manner in which he provided treatment to Kister created a substantial risk to his health and that with this knowledge consciously disregarded such risk. *Keohane*, 952 F.3d at 1266. Consequently, Kister has failed to submit sufficient evidence to establish that Dr. Siddiq violated his Eighth Amendment rights. Dr. Siddiq is therefore entitled to summary judgment. *See Celotex Corp.,* 477 U.S. at 322.

## V.     Injunctive Relief

In addition to seeking damages against the named defendants, Kister also requests injunctive relief. Doc. 1 at 5. However, the transfer or release of a prisoner renders moot claims for injunctive or declaratory relief. *See Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979). "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (citation and quotation marks omitted); *see Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citation and quotation marks omitted) (observing that "[l]ogically, a prospective remedy will provide no relief for an injury that is, and likely will

remain, entirely in the past."). Because Kister is no longer incarcerated at Bullock his request for equitable relief is moot.[5]

## VI.   Supplemental Jurisdiction

Although it does not appear that Kister alleged any state law claims along with his federal claims under § 1983, construing the Complaint liberally, it implicates the state torts of negligence or medical malpractice. However, these claims are subject to dismissal  as review is only appropriate upon exercise of the court's supplemental jurisdiction. *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (quotation marks and citations omitted) (holding that "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative  fact."); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (finding the exercise of supplemental jurisdiction is discretionary). In the posture of this case, the exercise of supplemental jurisdiction is inappropriate based on the court's dismissal of all the claims over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (allowing district courts to decline to exercise supplemental jurisdiction over a claim where "the district court has dismissed all claims over which it has original jurisdiction").

An appropriate judgment will be entered.

---

[5] Kister was transferred to other  correctional facilities during the pendency of this action. *See* Docs. 39, 41. He is currently housed at the Bibb Correctional Facility. Doc. 42.

Done, this 15th day of June 2023.

/s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE